V. SOWLES and J. L. McLEOD, Plaintiffs and Appellees, v. AUGUST C. MARTENS and MRS. FRANK REETZ, Defendants and Appellants.

**Intoxicating liquors:** SALE TO MINORS: EVIDENCE. The sale of liquor
1 to minors is a violation of law without reference to knowledge of the infancy of the buyer; the seller must at his peril know that the person to whom he sells is authorized to buy. The evidence in this case established a violation of the statute in this respect.

**Same:** LOCATION OF BAR: EVIDENCE. Under the statute the bar of
2 a saloon must be located in plain view of a street. Evidence held to show that the statute was violated in this respect.

**Same:** `LOCATION OF BUILDING:   BUSINESS STREET:   EVIDENCE.   The statute requires that a saloon shall have but one entrance or exit, which shall open upon a public business street.   Evidence held to show that the saloon in question was not upon a business street, within the meaning of the statute.

*Appeal from Crawford District Court,* HON. F. M. POWERS, Judge.

WEDNESDAY, JULY 2, 1913.

DEFENDANTS were enjoined from operating a saloon on lot 3 and block 3, in the town of Charter Oak, Iowa, on three grounds: First, that the business was not conducted on a public business street; second, that the bar was not in plain view from the street; third, that they sold to minors.   Defendants appeal.—*Affirmed.*

*L. H. Salinger* and *Ralph Maclean,* for Appellants.

*M. S. Odle,* for Appellees.

GAYNOR, J.—This is an action to enjoin the defendants from maintaining a liquor nuisance, and it is alleged that, prior to the commencement of this action, and at the time this action was commenced, they kept a place on lot 3 in block 3, in the city of Charter Oak, in which they kept for sale and sold intoxicating liquors in violation of law. Proper pleadings having been presented, involving all the issues necessary for a proper determination of the case, it was admitted upon the trial that the defendants had complied with all the requirements of the Mulct Law to entitle them to carry on the business of selling intoxicating liquors, but it was claimed that they had not conducted the business as required by the Mulct Law (Code Supp. 1907, section 2448) in three particulars: First, that the place occupied by them as a saloon was not on a public business street; second, that the bar was not

in plain view of the street; third, that sales were made in said place, by the defendants to minors. Upon these issues, the cause was tried to the court and the court found in favor of the plaintiff, and granted a permanent injunction against both defendants, enjoining and restraining them from carrying on the business aforesaid in said building. From the decree so entered, the defendants appeal.

The law governing the rights of the parties upon the issues tendered is well settled in this state at this time. The undisputed evidence shows that the defendants were conducting a place in which intoxicating liquors were sold and kept for sale. That is, that they were running a public saloon at said place and selling intoxicating liquors in the usual manner in which that business is carried on, at the time, and prior to the time, this action was commenced.

We will consider the propositions in the reverse order in which they are mentioned above.

First. Does the evidence show that the defendants were selling to minors?

One McManamy, testifying for the plaintiff, said that he was a minor, twenty years of age; that, during the summer of 1912 he had been frequently in the saloon. Had drank there; the first time with a bunch of men. He is 1. Intoxicating liquors: sale to minors: evidence. not certain as to the number of times he was there, but thinks three or four times, and each time got beer. He does not know, but thinks he did not buy it; that it was given to him; that he was treated; that he was in there with different fellows at different times; once with his uncle. He bought beer and gave it to him in the saloon. He said that some one asked him how old he was, and he said he was twenty-one. He lied about it. He was not twenty-one. He was in there after that, but did not remember that any one asked him his age. The time he went in with his uncle, his uncle asked for beer, and the bartender handed it out, and his uncle paid for it.

One Hans Flagmen testified: "I was in defendant's sa-

loon about the 26th day of September, 1912. I was in there lots of times. More than a dozen. I got liquor when I was there. Got beer and whisky. Paid for it. Never bought any of defendant personally. Bought it of the bartender. I was not twenty-one years of age. I was there several times before I was twenty-one and got liquor. I was twenty-one on the 1st day of November, 1912.''

The statute (Code Supp. 1907, section 2448, subd. 10) governing the right of parties operating a saloon' has this inhibition upon parties who otherwise would have a right to operate, and a violation of this inhibition removes all protection which a compliance with the preliminary provisions would afford: ''No minor, drunkard or intoxicated person, shall be allowed in the room, and no sales of intoxicating liquors shall be made to any minor, drunkard or intoxicated person, or knowingly to any person who has taken any of the so-called 'cures for drunkenness.' ''

In the case of *State of Iowa v. Thompson,* reported in 74 Iowa, 119, it was held: ''The defendant, . . . when on trial for the unlawful sales of intoxicating liquors to inebriates or minors, cannot excuse himself on the ground of his ignorance of the fact that the persons to whom he sold were minors. . . . He was bound to know whether they were persons to whom he could lawfully sell.''

In *Jamison v. Burton,* 43 Iowa, 282, it was asid: ''As there is a general inhibition upon the sale of intoxicating liquors, followed by a permission to sell under certain circumstances to persons not minors, it would seem to follow logically that a sale to a minor is a violation of the statute, and that the person selling must at his peril know that the person to whom he sells is authorized to buy (citing *State v. Hartfiel,* 24 Wis. 60).'' In the Wisconsin case, it appears that the purchaser was six feet one inch in height, and that the defendant, before letting him have the liquor, inquired whether he was of age, and received an affirmative answer.

See, also, *Fielding v. La Grange, et al.,* 104 Iowa, 530, in which the same doctrine was held.

It would appear that there was no error on the part of the court in holding that in this respect the defendants had not complied with the requirements of the law under which they sought protection from its penalty, and the injunction was therefore rightly granted.

The next question presented is, Was the bar in plain view of the street?

The statute provides that the bar where liquors are furnished shall be in plain view from the street, unobstructed by screens, blinds, painted windows, or any other

2. SAME: location of bar: evidence.

device. It appears: That this saloon faced to the east upon a public street. That the entrance was in the east. That there was a window on the north and a window on the south side of the door. The size and height of these windows is not shown. That the bar where the liquors were sold was at the north side of the building, and the east end of the bar was about six feet from the east side of the building. That between the bar and the east wall of the building there were cigar cases. The height of these cigar cases is not shown, nor their exact location. There is testimony that, by going up to the south window and looking in, you could, from that point, see a portion of the bar; that from the north window on the east end of the building you could also see a portion of the bar; that from neither window could you see the entire bar.

Witnesses testified that they had tried to see in the window, and to see who was there along the bar; that you could not "tell a man" from either of these windows, unless you got your face right up to the window. One witness says, "You couldn't see the bar from the outside, and see who was in there, because the window was too high. I have tried to see the bar from the outside on the street, but couldn't."

There is a conflict in the evidence as to whether or not this bar could be seen from the public street. The law re-

quires that it be in plain view from the street. If it is in plain view, there ought to be no honest difference of opinion as to whether or not the bar could be seen from the public street. These witnesses were before the court. He had an opportunity to see and hear them, and is in a better position to judge of the truthfulness of their statements than we are, with only the cold print before us. We think there is sufficient in the record to show a failure on the part of the defendants to conform to this requirement of the law, and for this he was rightly enjoined.

The third proposition on which the plaintiff seeks an injunction is that the building ocupied by the defendant Martens, and owned by the defendant Reetz, did not open on a business street.

The statute requires that the selling or keeping for sale of intoxicating liquors shall be carried on in a single room, having but one entrance or exit, and that opening upon a public business street. That this was a public street, a street open to public travel and dedicated to public use, there can be no question. Is it a business street? Is it a street dedicated to, or used for business? The street on which this saloon stands is known as Third avenue. The street immediately west of that is Main street. This Main street is occupied on both sides with business buildings from the railway right of way south for two blocks. The lots fronting on Main street, for three blocks south of the railway, are occupied by business houses and for business purposes. These lots on Main street, facing on the street, are divided into business lots, and are about half the width, in their frontage upon the street, of the lots in the balance of the platted portion of the city; evidently laid out for business purposes. The lots on Third avenue, where this building is situated, are of the same size, in their frontage on the street, as all the lots are in the residence portion of the town. There are no business buildings on this Third avenue, except the saloon

3. Same: location of building: business street: evidence.

in question. The lots on Third avenue were not laid out for business purposes. This is suggested by the width of the lots and their frontage upon the street, as compared with those on Main street. This in itself would not be sufficient on which to determine that this was not a business street, but it appears not to have been devoted to business until this saloon was placed there, except that there is a blacksmith shop at the corner, across the street from the saloon, but it does not face upon this street. It faces to the north. All the balance of this avenue seems to be occupied by residences. The placing of the saloon here did not make it a business street. Under the requirements of the law it must open upon a business street. The object and purpose of this law is to take the place where intoxicating liquors are sold out of the residence portion of the town, and place it at a point where business is carried on, that it may not be an annoyance to the home life of the citizen, and may be where it will be under police surveillance.

Therefore, inasmuch, as all the lots, for three blocks on Main street south of the railway right of way, on both sides of the street, have but a twenty-five-foot frontage, and were evidently laid out for business purposes and occupied for two blocks on both sides of the street with business houses in which business is carried on, and all the lots on Third avenue, where the saloon is were laid out with a fifty-foot frontage, and are occupied for residence only, excepting this particular building, we cannot say that this business is carried on in a building with but one exit and but one entrance, and that upon a public business street. The nearest business place to this is a blacksmith shop, and that has its exit and its entrance, so far as this record shows, upon the street running east and west, across and north of this Third avenue. True, the blacksmith shop is at the corner of Third avenue and this east and west street, but the business is not carried on on Third avenue. All the business that seems to be done on this east and west street, along the line of the

railway track seems to have been to the north, and not upon Third avenue.

Upon the whole record, we do not think the court erred in finding that the building in which the business was carried on, and against which the injunction runs, was not on a public business street.

We find no error and the case is *Affirmed.*